IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

_____

No. 08-1703

---

Dennis Earl Barnes,
       Plaintiff-Appellant,
   v.

William J. Black et al.,
      Defendants-Appellees.

---

Appeal from Interlocutory Order Denying Petition of Writ of Habeas
Corpus *Ad Testificandum* and Interlocutory Order for Relief from
Order, the United States District Court for the Central District of
Illinois, The Honorable Joe Billy McDade, Presiding

---

*Amicus Curiae* Brief of State of Wisconsin

---

J.B. VAN HOLLEN
Attorney General

RICHARD BRILES MORIARTY*
Assistant Attorney General
State Bar #1017190
Attorneys for State of Wisconsin,
*Amicus Curiae*

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796

*Counsel of Record*

# TABLE OF CONTENTS

Page

Statement of the Identity of the Amicus Curiae, Its Interest in the Case, and the Source of its Authority to File ..................................... 1

Argument ................................................................................. 4

I.  District courts are not authorized to order officials of non-consenting States to produce an inmate beyond the State's borders to testify in a civil suit that challenges neither confinement nor actions by any State agent. .......................................................... 4

  A.  The Great Writ and other types of *habeas* writs. ........................................................... 4

  B.  Eleventh Amendment immunity and the *Ex parte Young* exception in habeas contexts............. 6

    1.  The Suspension Clause and writs of habeas corpus against State custodians. .......... 6

    2.  The Fourteenth Amendment. ............................ 7

    3.  District court authority to order officials of non-consenting States, under the Great Writ, to produce inmates is confined to the *Ex parte Young* exception to Eleventh Amendment immunity................... 8

  C.  Collateral proceedings regarding *ad testficandum* writs against State custodians are "suits" within the meaning of the Eleventh Amendment. .............................................. 12

  D.  Authority of district courts to issue writs of habeas corpus *ad testificandum* to State custodians. ................................................ 13

E. The burden on States, and the affront to their sovereignty, is heightened dramatically when district courts require States to transport inmates beyond the States' own borders for testimony purposes in cases that question neither the propriety of confinement nor actions by any State agent.........................22

    1. A State's costs in transporting inmates pursuant to federal *ad testificandum* writs may not be recovered from the inmate or form the U.S. Marshals' Service.................................................22

    2. The *Stone* statement. .......................23

    3. Continuing viability of *Stone* statement. .........24

F. The court below articulated alternate reasons to conclude that it lacked authority to issue the requested writ. ..........................................27

G. Conclusion. ...............................................29

II. If judicial authority existed to issue the writ requested by barnes, the court below correctly determined that a writ of habeas corpus *ad testificandum* should not issue.......................................29

Conclusion ...............................................33

# CASES

Alden v. Maine,
    527 U.S. 706 (1999) ...................................................................... 11

Andrews v. Johnson,
    976 F.Supp. 527 (N.D.Tex. 1997).................................................. 19

Ballard v. Spradley,
    557 F.2d 476 (5th Cir. 1977) .................................................. 15, 16

Banton v. Belt Line Ry. Corporation,
    268 U.S. 413 (1925) ...................................................................... 30

Barber v. Page,
    390 U.S. 719 (1968) ...................................................................... 24

Board of Trustees of University of Alabama v. Garrett,
    531 U.S. 356 (2001) ............................................................ 15, 19-21

Booth v. State of Md.,
    112 F.3d 139 (4th Cir. 1997),
    cert. denied, 524 U.S. 905 (1998).............................................. 9, 13

Bouchard Transp. Co. v. Florida Dept. of
    Environmental Protection,
    91 F.3d 1445 (11th Cir. 1996)...................................................... 17

Breard v. Greene,
    523 U.S. 371 (1998) (per curiam).................................................. 26

Brennan v. Stewart,
    834 F.2d 1248 (5th Cir. 1988.) ...................................................... 9

Bridges v. Chambers,
    425 F.3d 1048 (7th Cir. 2005) ....................................................... 8

Bryant v. Better Business Bureau of
    Greater Maryland, Inc.,
    923 F.Supp. 720 (D.Md.1996) ...................................................... 29

Carbo v. United States,
364 U.S. 611 (1961) ........................................................................ 18

Central Virginia Community College v. Katz,
546 U.S. 356 (2006) ..................................................................... 7, 18

Consolidated Grain and Barge Co. v.
Wisconsin Barge Line, Inc.,
522 F.Supp. 842 (E.D.Mo. 1981) .................................................. 30

Delaney v. Matesanz,
264 F.3d 7 (1st Cir. 2001) ............................................................ 6, 7

Ex Parte Bollman,
4 Cranch 75
8 U.S. 75 (1807) .............................................................. 4, 5, 17, 18

Ex Parte Dorr,
44 U.S. (3 How.) 103 (1845) ......................................................... 15

Ex Parte Young,
209 U.S. 123 (1908) ........................................................... 9-14, 26-27

Fay v. Noia,
372 U.S. 391 (1963),
overruled on other grds,
Coleman v. Thompson,
501 U.S. 722 (1991) and
Wainwright v. Sykes
433 U.S. 72 (1977) ......................................................................... 4, 5

Ford v. Carballo,
577 F.2d 404 (7th Cir. 1978) ........................................................ 25

Gibson v. U.S.,
53 F.2d 721 (8th Cir. 1931),
cert. denied, 285 U.S. 557 (1932) ................................................ 15

Green v. Mansour,
474 U.S. 64 (1985) ........................................................................ 14

Hafer v. Melo,
    502 U.S. 21 (1991) ........................................................................ 13

Industrial Lumber Co. v. Commissioner of Internal Revenue,
    58 F.2d 123 (5th Cir. 1932) ........................................................... 30

In re NVR, LP, 189 F.3d 442 (4th Cir. 1999),
    cert. denied, 528 U.S. 1117 (2000) ............................................... 12

Jones v. Lilly,
    37 F.3d 964 (3rd Cir. 1994),
    reh. & reh. en banc denied ..................................................... 12, 16

Latiolais v. Whitley,
    93 F.3d 205 (5th Cir. 1996) ........................................................... 16

Lehman v. Lycoming County Children's Services Agency,
    458 U.S. 502 (1982) ....................................................................... 10

Lynk v. LaPorte Superior Court No. 2,
    789 F.2d 554 (7th Cir. 1986) ......................................................... 12

Lowrance v. Pflueger,
    878 F.2d 1014 (7th Cir. 1989) ....................................................... 30

Mancusi v. Stubbs,
    408 U.S. 204 (1972) ....................................................................... 24

Matter of Warden of Wisconsin State Prison,
    541 F.2d 177 (7th Cir. 1976) ................................................... 20, 21

Merritt v. Faulkner,
    823 F.2d 1150 (7th Cir. 1987) (Posner, J., concurring) ............... 27

Missouri v. Fiske,
    290 U.S. 18 (1933) ......................................................................... 12

MSA Realty Corp. v. State of Ill.,
    990 F.2d 288 (7th Cir. 1993) ......................................................... 13

Musikiwamba v. ESSI, Inc.,
    760 F.2d 740 (7th Cir. 1985) ............................................. 13

Pennhurst State School & Hosp. v. Halderman,
    465 U.S. 89 (1984) ............................................................ 14

Pennsylvania Bureau of Correction v.
    United States Marshals Service,
    474 U.S. 34 (1985) ............................................................ 22

Poodry v. Tonawanda Band of Seneca Indians,
    85 F.3d 874 (2nd Cir.),
    cert. denied, 519 U.S. 1041 (1996)....................... 9, 10, 18

Preiser v. Rodriguez,
    411 U.S. 475 (1973) ...................................................... 4, 5

Rasul v. Bush,
    542 U.S. 466 (2004) ......................................................... 16

Robb v. Norfolk & Western Ry. Co.,
    122 F.3d 354 (7th Cir. 1997)
    reh. & reh. en banc denied..................................... 24, 26

Saco v. Tug Tucana Corp.,
    483 F.Supp.2d 88 (D.Mass. 2007)................................. 30

Seminole Tribe of Florida v. Florida,
    517 U.S. 100 (1996)
    (Souter, Ginsburg & Breyer, dissenting) .................... 8, 9

Stocker v. Warden, SCI Graterford,
    2004 WL 603400 (E.D.Pa. March 25, 2004)
    (No. CIV.02-2077).......................................... 6, 7, 8, 11, 20

Stone v. Morris,
    546 F.2d 730 (7th Cir. 1976) ...................22-26, 29, 31-33

Thomas v. FAG Bearings Corp.,
    50 F.3d 502 (8th Cir. 1995) ........................................... 12

Thornton v. Snyder,
    428 F.3d 690 (7th Cir. 2005)
    reh. & reh. en banc denied ............................................................ 31

U. S. v. Orejel-Tejeda,
    194 F.Supp. 140 (N.D.Cal. 1961) ................................................ 30

U.S. v. Hayman,
    342 U.S. 205 (1952) ........................................................................ 5

U.S. v. Horn,
    29 F.3d 754 (1st Cir. 1994) ........................................................... 17

United States v. Crawley,
    837 F.2d 291 (7th Cir. 1988) ........................................................ 23

Verizon Maryland, Inc. v. Public Service
    Com'n of Maryland,
    535 U.S. 635 (2002) ...................................................................... 14

Vickery v. Jones,
    100 F.3d 1334, 1347 (7th Cir. 1996),
    cert. denied, 520 U.S. 1197 (1997) .............................................. 26

Wiggins Bros., Inc. v. Department of Energy,
    667 F.2d 77 (Em.App. 1981),
    cert. denied, 456 U.S. 905 (1982) ................................................ 29

Wilder v. Apfel,
    153 F.3d 799 (7th Cir. 1998) ........................................................ 23

## CONSTITUTIONAL PROVISIONS

U.S. Const., Art. I, § 9, cl. 2 ...................................................... 6

U.S. Const., Amend XI .......................................... 3, 8, 12-18, 23

U.S. Const., Amend XIV .......................................... 7, 8, 20, 21

## STATUTES

28 U.S.C. § 2241 et seq. ................................................................. 20, 26

## RULES

Fed.R.Evid. 901 .............................................................................. 30

Fed.R.Evid. 902 .............................................................................. 30

Fed.R.App.R. 29(a) .......................................................................... 1

IN THE UNITED STATES COURT OF APPEALS

FOR THE SEVENTH CIRCUIT

———————————

No. 08-1703

———————————

Dennis Earl Barnes,

      Plaintiff-Appellant,

  v.

William J. Black et al.,

      Defendants-Appellees.

———————————

Appeal from Interlocutory Order Denying Petition of Writ of Habeas Corpus *Ad Testificandum* and Interlocutory Order for Relief from Order, the United States District Court for the Central District of Illinois, The Honorable Joe Billy McDade, Presiding

———————————

*Amicus Curiae* Brief of State of Wisconsin

———————————

## Statement of the Identity of the Amicus Curiae, Its Interest in the Case, and the Source of its Authority to File

The State of Wisconsin, by Attorney General J.B. Van Hollen and Assistant Attorney General Richard Briles Moriarty, while reserving all rights, timely submits this *amicus curiae* brief. Fed.R.App.R. 29(a). Dennis Earl Barnes, Plaintiff-Appellant, an inmate at Fox Lake Correctional Institution operated by a Wisconsin agency, petitioned for

a writ of habeas corpus *ad testificandum*. Barnes sought to require his custodian to transport him between Fox Lake, Wisconsin and Peoria, Illinois for trial in this civil lawsuit he initiated regarding a vehicular accident. No Wisconsin agent was involved in that accident or a party to this lawsuit.

The court below, expressing concerns about its authority to grant the writ of habeas corpus *ad testificandum* requested by Barnes and, if it had authority, the propriety of granting that writ, invited Wisconsin to submit an *amicus* brief. (Dkt. 208, p. 6.) Reserving all rights, Wisconsin accepted that invitation. It offered, as an accommodation between sovereigns, to voluntarily make Barnes available for trial, without leaving Fox Lake Correctional Institution, by videoconference.

On January 14, 2008, the court below (1) determined that it had general authority to grant *ad testificandum* writs to State custodians extraterritorially, (2) determined that this authority did not extend to this setting – where no actions by Wisconsin agents were challenged and Barnes sought to not only testify but prosecute his lawsuit, (3) assuming *arguendo* that it had authority, articulated reasons that it would not exercise discretion to grant Barnes' petition, and (4) allowed Barnes to participate at trial by videoconference. On January 28, 2008, Barnes challenged that Order and, on February 27, 2008, the court

denied that challenge. On March 24, 2008, Barnes commenced this interlocutory appeal.

Wisconsin is directly interested in the issues addressed in this *amicus* brief. As recognized at common law and guaranteed by the Eleventh Amendment to the United States Constitution (U.S. Const., Amend XI), the sovereign interests of Wisconsin protect it from involuntary involvement in federal court litigation, particularly when that involvement drains Wisconsin's treasury, except to the extent authorized by the United States Constitution, as amended. Whether district courts are authorized to order State custodians to transport inmates to court beyond their borders, in circumstances such as those presented here, directly affects those sovereign rights.

Should this Court conclude that district courts have authority to issue the type of writ Barnes requested and that his request should have been granted, that would call on Wisconsin to involuntarily dedicate substantial resources, drawn from revenues obtained from Wisconsin's citizens and unrecoverable from Barnes or the Marshals Service, in a case that questions neither the propriety of Barnes' confinement nor actions by any Wisconsin agent.

**Argument**

I.    District courts are not authorized to order officials of
non-consenting States to produce an inmate beyond the
State's borders to testify in a civil suit that challenges
neither confinement nor actions by any State agent.

   A.    The Great Writ and other types of *habeas* writs.

When "the words 'habeas corpus' are used alone, they have been
considered a generic term understood to refer to the common-law writ
of habeas corpus *ad subjiciendum*, which was the form termed the
'great writ.'" *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) citing *Ex
parte Bollman*, 4 Cranch 75, 96-98, 8 U.S. 75, 96-98 (1807).  The Great
Writ has "extraordinary prestige" in Anglo-American jurisprudence and
is "'perhaps the most important writ known to the constitutional law of
England, affording as it does a swift and imperative remedy in all cases
of illegal restraint or confinement' [citation omitted]." *Fay v. Noia*, 372
U.S. 391, 399-400 (1963), overruled on other grds., *Wainwright v. Sykes*,
433 U.S. 72 (1977) and *Coleman v. Thompson*, 501 U.S. 722 (1991).

The Great Writ, "[r]eceived into our own law in the colonial
period, given explicit recognition in the Federal Constitution, Art. I, § 9,
cl. 2, [and] incorporated in the first grant of federal court jurisdiction,
Act of September 24, 1789, c. 20, s 14, 1 Stat. 81--82,…was early
confirmed by Chief Justice John Marshall to be a 'great constitutional

privilege.' [Citation omitted.]" *Fay*, 372 U.S. at 400. The "essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody." *Preiser*, 411 U.S. at 484.

"By the end of the 16th century, there were in England several forms of habeas corpus, of which the most important … was habeas corpus *ad subjiciendum*--the writ used to 'inquir(e) into illegal detention with a view to an order releasing the petitioner.' [Citation to *Fay* omitted.]" *Preiser*, 411 U.S. at 484. Beyond the Great Writ, "other varieties of the writ were known to the common law" including "'writs of habeas corpus '*ad …testificandum* …which issue when it is necessary to remove a prisoner, in order to … hear testimony in any court' [citations omitted.]" *U.S. v. Hayman*, 342 U.S. 205, 221, n.35 (1952). *See Bollman*, 4 Cranch at 96-98, 8 U.S. at 96-98 (defining various habeas corpus writs).

Barnes petitioned for a writ of habeas corpus *ad testificandum* through which he sought to require Wisconsin agents to transport him Fox Lake, Wisconsin to Peoria, Illinois, kept there during the trial and then returned by those Wisconsin agents to the place of his confinement. Analyzing whether the court below had authority to grant

the writ requested by Barnes is best commenced by analyzing authority to issue the Great Writ against State custodians.[1]

      B.      Eleventh Amendment immunity and the *Ex parte Young* exception in habeas contexts.

      1.      The Suspension Clause and writs of habeas corpus against State custodians.

"In 1789, the writ was designed primarily to protect against the power of the [federal] Executive to hold someone captive without trial, [citation omitted], and it was not until 1867 that Congress extended the writ to include **state** prisoners who challenged their convictions on constitutional or statutory grounds." *Delaney v. Matesanz*, 264 F.3d 7, 12 (1st Cir. 2001), emphasis added.  The only mention of habeas corpus writs in the Constitution was, and remains, in the Suspension Clause. U.S. Const., Art. I, § 9, cl. 2.

Some Court members have concluded that "the Suspension Clause does not affirmatively guarantee a right to habeas corpus, but simply prohibits temporary withholding of the writ' [citation omitted]" while other Court members have differing views.  *Delaney*, 264 F.3d at 12, n.1.  It is safe to say that the Suspension Clause prohibits Congress

---

[1]To minimize confusion, writs are referenced by common law names throughout, although federal court authority derives solely from "written law" (p. 18 *infra*).

from "completely eliminat[ing]" habeas corpus regarding all custodians on a permanent basis. *Stocker v. Warden, SCI Graterford*, 2004 WL 603400, *8 (E.D.Pa. March 25, 2004) (No. CIV.02-2077). Also, the lack of federal judicial authority to issue the Great Writ against State custodians for the first 90 years after the Constitution (with one narrow exception)[2] confirms that the Suspension Clause did not require those remedies against State custodians. Otherwise, "the historical puzzle remains unsolved" regarding the interaction between the Suspension Clause and federal habeas remedies. *Delaney*, 264 F.3d at 12.

2. The Fourteenth Amendment.

Some courts and commentators have concluded that Congress's 1867 decision to extend the Great Writ to include state prisoners who challenged detentions as violative of federal law was grounded on the Fourteenth Amendment (U.S. Const., Amend XIV). *Stocker*, 2004 WL 603400 at *9-*11. According to *Stocker*:

> Even as the Reconstruction Congress believed the [Great] Writ was protected by the Fourteenth Amendment, [footnote omitted] it sought to expand federal habeas review as much as possible. … Providing expansive federal habeas protection was of central concern to the framers of the Fourteenth Amendment. [Citation omitted.] … Such protection was requisite to protection of federal claims, as many southern states had already displayed their willingness to withhold and manipulate habeas in order to suppress blacks and continue

---

[2]Congress earlier had authorized habeas proceedings against State custodians detaining debtors contrary to Congress's bankruptcy laws. *Central Virginia Community College v. Katz*, 546 U.S. 356, 371 (2006).

> slavery. [Citation omitted.] Commentators concur that the purpose of such an expansion of the federal judiciary's power "was plainly intended to help safeguard the new ... constitutional rights created after the Civil War." [Citations omitted.]

2004 WL 603400 at *11.  As noted later, if other federal habeas remedies obtained constitutional grounding through the Fourteenth Amendment, the writ sought by Barnes did not.  (Pp. 18-22 *supra*.)

3. District court authority to order officials of non-consenting States, under the Great Writ, to produce inmates is confined to the *Ex parte Young* exception to Eleventh Amendment immunity.

District court authority to order officials of non-consenting States, under the Great Writ, to produce inmates is confined to the *Ex parte Young* exception to Eleventh Amendment immunity.  Among the reasons that Wisconsin itself is not "a proper respondent" in a habeas corpus *ad subjuciendum* proceeding is that "the state has sovereign immunity from suit in federal court."  *Bridges v. Chambers*, 425 F.3d 1048, 1050 (7th Cir. 2005).  "It is well recognized that when a habeas corpus petitioner sues a state official alleging detention in violation of federal law and seeking the prospective remedy of release from custody, it is the doctrine identified in *Ex parte Young* that allows the petitioner to evade …the Eleventh Amendment…[Citation omitted.]"  *Seminole Tribe of Florida v. Florida*, 517 U.S. 100, 178 (1996) (Souter, Ginsburg & Breyer, dissenting).

"'[A]lthough not usually conceptualized as *Ex parte Young* cases," writs of habeas corpus *ad subjuciendum* "pass muster under the Eleventh Amendment because the habeas theory of a civil suit against the bad jailor fits perfectly with the *Ex parte Young* fiction.'" *Seminole Tribe*, 517 U.S. at 178 quoting *Brennan v. Stewart*, 834 F.2d 1248, 1252, n.6 (5th Cir. 1988.)  See *Ex Parte Young*, 209 U.S. 123, 167-68 (1908). The reason that the "Eleventh Amendment offers no bar to a habeas corpus petition against a state which is holding a prisoner in violation of the Constitution or laws of the United States" is that the petition "falls squarely under *Ex Parte Young* - it is an action brought against state officials to prevent the continued detention of a prisoner pursuant to an unlawful conviction or sentence."  *Booth v. State of Md.*, 112 F.3d 139, 144-45 (4th Cir. 1997), *cert. denied*, 524 U.S. 905 (1998).

Habeas writs against State custodians alleging illegal detentions are not "viewed as a suit against the sovereign, simply because the restraint for which review is sought, if indeed illegal, would be outside the power of the official acting in the sovereign's name [citations omitted]."  *Poodry v. Tonawanda Band of Seneca Indians*, 85 F.3d 874, 899 (2nd Cir.), cert. denied, 519 U.S. 1041 (1996).  Because writs of habeas corpus *ad subjuciendum*, when properly issued, fall within the *Ex parte Young* exception to sovereign immunity, Congress, whenever it

authorizes federal habeas corpus writs against custodians employed by another sovereign to address detentions allegedly violative of federal law, has no intent to abrogate the immunity of that sovereign. *E.g.*, *Poodry*, 85 F.3d at 899 (finding statute allowing habeas proceedings against tribal custodians equivalent to statutes allowing habeas proceedings against federal and State custodians and holding that Congress, by authorizing habeas proceedings against tribal custodians regarding detentions allegedly violative of federal law, had no intent of abrogating tribal sovereign immunity).

Nonetheless, the *Ex parte Young* **fiction** that State custodians act beyond the authority granted by the State when detentions are allegedly violative of federal law, has never prevented the Supreme Court from recognizing the **fact** that "'Federal habeas involves a substantial thrust by the federal system into the sphere normally reserved to the states and hence a change in the federal-state balance.' [Citation omitted.]" *Lehman v. Lycoming County Children's Services Agency*, 458 U.S. 502, 512, n.16 (1982). Intrusion into State affairs by federal courts, particularly when those intrusions require involuntary expenditures of substantial resources by States, must be viewed through the lens of a more global understanding of how difficult – and critical – it is to keep the atom of sovereignty, split by the Founders,

from collapsing into one national government that absorbs State governments. "By "'split[ting] the atom of sovereignty,'" the Founders established "'two orders of government, each with its own direct relationship, its own privity, its own set of mutual rights and obligations to the people who sustain it and are governed by it.'" [Citation omitted.]" *Alden v. Maine*, 527 U.S. 706, 751 (1999). Intrusion by the federal government into the province of State governments, if unauthorized by the United States Constitution, "strikes at the heart of the political accountability so essential to our liberty and republican form of government." *Alden*, 527 U.S. at 751.

These intrusions may well be justified when a State inmate is allegedly confined in ways violative of federal law. Assuming that the 1867 extension of the Great Writ to State custodians was constitutionally grounded in the Fourteenth Amendment (*e.g., Stocker*, 2004 WL 603400 at *9-*11), it makes constitutional sense to require States – through the *Ex parte Young* fiction - to expend State resources drawn from its own citizens so that detentions allegedly violative of federal law are redressible through the Great Writ.

With Congressional power to issue writs of habeas corpus *ad subjuciendum* against State officials being constitutionally justified only through the *Ex parte Young* fiction, however, how could district

courts, without breaching Eleventh Amendment protections, order

officials of non-consenting States to produce inmates beyond their

borders to testify in civil suits that challenge neither the inmates'

confinement nor any alleged misconduct by any State agent?

> C. Collateral proceedings regarding *ad testificandum*
> writs against State custodians are "suits" within the
> meaning of the Eleventh Amendment.

Collateral proceedings regarding *ad testificandum* writs against

State custodians are sufficiently substantive and coercive, and separate

from the main litigation, to be "suits" under the Eleventh Amendment.

*Compare, e.g., In re NVR, LP*, 189 F.3d 442, 450-51(4th Cir. 1999), cert.

denied, 528 U.S. 1117 (2000); *Thomas v. FAG Bearings Corp.*, 50 F.3d

502, 507 (8th Cir. 1995). See also *Missouri v. Fiske*, 290 U.S. 18, 26-27

(1933). States' interests, when those writs are granted, are sufficiently

weighty to merit interlocutory appeal. *E.g., Jones v. Lilly*, 37 F.3d 964,

966 (3rd Cir. 1994), reh. & reh. en banc denied (noting, among other

factors, that "the State's entitlement, in the absence of exigent

circumstances, to run its prisons efficiently and effectively without

outside federal interference will have been compromised, absent an

immediate appeal"). So are inmates' interests, when those writs are

denied. *E.g., Lynk v. LaPorte Superior Court No. 2*, 789 F.2d 554, 561

(7th Cir. 1986).

D.    Authority of district courts to issue writs of habeas corpus *ad testificandum* to State custodians.

When inmates seek to expand the habeas exception that allows them to challenge their confinement as violative of federal law, they confront Eleventh Amendment immunity.  *Compare, e.g., Booth*, 112 F.3d at 144-45 (finding prisoners' suit barred by immunity, while noting "the controversy 'involves' the federal habeas corpus statute" and that "the prisoners cannot invoke the habeas corpus exception to Eleventh Amendment immunity" because they did not challenge confinement and did not actually seek a habeas writ).  Federal habeas writs that direct State custodians not personally involved in allegedly violating federal rights to produce those inmates for any purpose are necessarily pursued in official rather than individual capacity settings – as the *Ex parte Young* analysis above reflects.  *Compare e.g.*, *Hafer v. Melo*, 502 U.S. 21, 25-26 (1991) (distinguishing official and individual capacity claims); *MSA Realty Corp. v. State of Ill.*, 990 F.2d 288, 291-92 (7th Cir. 1993) (same); *Musikiwamba v. ESSI, Inc.*, 760 F.2d 740, 753 (7th Cir. 1985) (individual capacity claims require allegations of personal involvement).

"In determining whether the doctrine of *Ex parte Young* avoids an Eleventh Amendment bar to suit, a court need only conduct a 'straightforward inquiry into whether [the] complaint alleges an

ongoing violation of federal law and seeks relief properly characterized as prospective.' [Citation omitted.]" *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002). Barnes' petition confirms that it neither pursued remedies against his warden in his individual capacity nor qualified under the *Ex parte Young* exception. His petition, questioning neither confinement nor actions by any Wisconsin agent, alleged no "ongoing violation of federal law." *Id.*

With the *Ex parte Young* exception unavailable regarding the writ requested by Barnes, Eleventh Amendment immunity comes into play. In that context, how could the court below have had the authority to grant the type of writ sought by Barnes? *E.g., Green v. Mansour*, 474 U.S. 64, 68 (1985) (official capacity claims against State agent barred where plaintiffs alleged no ongoing violation of federal law); *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (official capacity claims against State agent barred where only state law violations alleged).

Courts often declare that district courts have authority to issue writs of habeas corpus *ad testificandum* – including writs directed to State custodians. Wisconsin has located no decision, however, that expressly identifies a source grounded in the Constitution that would

overcome Eleventh Amendment hurdles. *E.g.*, *Board of Trustees of University of Alabama v. Garrett*, 531 U.S. 356, 363-71 (2001).

In 1845, **before** the 1867 extension of the habeas statute to State custodians, the Court stated that "[n]either this nor any other court of the United States, or judge thereof, can issue a habeas corpus to bring up a prisoner, who is in custody under a sentence or execution of a state court, **for any other purpose than to be used as a witness**." *In Ex parte Dorr*, 44 U.S. (3 How.) 103, 105 (1845), emphasis added. The highlighted phrase was *dictum*, since the Great Writ, not any *ad testificandum* writ, was at issue. It was also contrary to earlier and later Court holdings that federal court authority to issue habeas writs was restricted to "written law" (pp. 17-18 *infra*). Also, *Dorr* neither explained that statement nor addressed any sovereign immunity concerns. This *dictum* has, however, occasionally been cited as itself authorizing district courts to require State custodians to produce inmates for testimonial purposes. *E.g.*, *Ballard v. Spradley*, 557 F.2d 476, 480 (5th Cir. 1977) (citing *Dorr*).

Inherent judicial powers are sometimes cited as authority for issuing writs of habeas corpus *ad testificandum* to State custodians. *E.g., Gibson v. U.S.*, 53 F.2d 721, 722 (8th Cir. 1931) ("The power to issue" a writ of habeas corpus *ad testificandum* "is inherent in the

court"), cert. denied, 285 U.S. 557 (1932).  More often, federal statutes are cited as authority for issuing of writs of habeas corpus *ad testificandum* to State custodians.  *E.g., Ballard*, 557 F.2d at 480; *Latiolais v. Whitley*, 93 F.3d 205, 208 (5th Cir. 1996); *Jones*, 37 F.3d at 966 ("the statute represents the codification of the common law writs of habeas corpus *ad testificandum* and *ad prosequendum* issued when necessary to produce a prisoner to prosecute him or obtain his appearance as a witness [citations omitted]").  *See also Rasul v. Bush*, 542 U.S. 466, 473 (2004).  Neither cited source, standing alone, meets the Eleventh Amendment tests identified in recent Court decisions.

Inherent judicial powers can never defeat an otherwise viable Eleventh Amendment immunity bar.  If they could, those powers would often tread deeply into territory constitutionally protected, by States' immunity, from intrusion.  Although *U.S. v. Horn*, 29 F.3d 754 (1st Cir. 1994) addressed federal sovereign immunity – which is generally a far less compelling barricade than Eleventh Amendment immunity – it recognized that "sovereign immunity ordinarily will trump [a court's] supervisory power in a head-to-head confrontation."  *Id.*, 29 F.3d at 764.  As *Horn* explained, when federal sovereign immunity conflicts with a court's inherent powers:

> … The critical determinant is that the doctrines are of
> fundamentally different character: supervisory powers are

discretionary and carefully circumscribed; sovereign immunity is mandatory and absolute. Consequently, whereas the former *may* be invoked in the absence of an applicable statute, the latter *must* be invoked in the absence of an applicable statute; and whereas the former *may* be tempered by a court to impose certain remedial measures and to withhold others, the latter *must* be applied mechanically, come what may. In other words, unlike the doctrine of supervisory power, the doctrine of sovereign immunity proceeds by fiat, …. [Citation omitted.]

*Id.*, 29 F.3d at 764.  *See also, e.g., Bouchard Transp. Co. v. Florida Dept. of Environmental Protection*, 91 F.3d 1445, 1448-49 (11th Cir. 1996) (resolution of immunity issue cannot be delayed pending mediation even though it is unquestionably within the court's inherent authority to order mediation).  As *Horn* observed, "even when inherent powers legitimately can be invoked, they must be exercised with restraint and circumspection, both 'because [they] are shielded from direct democratic controls,' [citation omitted], and "[b]ecause of their very potency,' [citation omitted]."  *Id.*, 29 F.3d at 764.  Merely asserting that it is within a court's inherent powers – whether derived from common law or otherwise – to issue writs of habeas corpus *ad testificandum* directed to State custodians would not overcome Eleventh Amendment protections.

Citing inherent powers as authority for federal habeas writs fails for another reason.  Federal district courts, unlike State courts, derive no habeas **powers** from the common law and instead must locate any habeas powers in "written law."  *Bollman*, 4 Cranch at 93-94, 8 U.S. at

93-94 (courts "whose jurisdiction is defined by written law, cannot transcend that jurisdiction" and "the power to award the writ by any of the courts of the United States, must be given by written law"). *See Carbo v. United States*, 364 U.S. 611, 614 (1961) (quoting *Bollman*). If the court below had any authority to order Barnes' Wisconsin custodian to move him beyond Wisconsin borders, and produce him for testimony purposes at a civil trial in another State, that authority must be found in "written law." *Bollman*, 4 Cranch at 93-94, 8 U.S. at 93-94; *Carbo*, 364 U.S. at 614.

Decisions that merely cite federal statutes as authority for writs of habeas corpus *ad testificandum* directed to State custodians would not satisfy current Eleventh Amendment immunity tests. States' immunity remains entirely unimpaired by a Congressional enactment unless Congress (a) expressly intends to abrogate States' immunity, (b) has valid Constitutional authority to abrogate, and (c) exercises that authority in prescribed ways. *E.g.*, *Garrett*, 531 U.S. at 363-71.

Congress, in creating federal habeas corpus remedies under the Great Writ, i.e., to address allegedly illegal detentions, has never expressed any intent to abrogate the immunity of any sovereign. *E.g.*, *Poodry*, 85 F.3d at 899; *Central Virginia Community College*, 546 U.S. at 371. An "Application for a Writ of Habeas Corpus" *ad subjuciendum*

"is **not** based on a statutory waiver of Sovereign immunity." *Andrews v. Johnson*, 976 F.Supp. 527, 529 (N.D.Tex. 1997), emphasis added.

Nothing in the applicable statute, 28 U.S.C. §§ 2241 et seq., or decisional law regarding that statute, suggests any intent to abrogate States' immunity regarding any habeas writ, for testimony purposes or otherwise. The threshold requirement for abrogation of Wisconsin's immunity against the writ requested by Barnes - that Congress expressly intended abrogation (*Garrett*, 531 U.S. at 363) - is absent.

Had Congress expressed intent to abrogate Wisconsin's immunity against the writ requested by Barnes, what would constitute Congress's constitutional granted authority to require a State to dedicate substantial resources, drawn from revenues obtained from its citizens, transporting Barnes beyond its borders to testify in a case that questions neither the propriety of Barnes' confinement nor actions by any Wisconsin agent? Conducting the *Garrett* inquiry confirms that Wisconsin's immunity remains intact.

What constitutional right under the Fourteenth Amendment would be at stake regarding Barnes' petition to testify in person in a civil lawsuit he commenced? *Garrett*, 531 U.S. at 365-68. There is none. *E.g.*, *Matter of Warden of Wisconsin State Prison*, 541 F.2d 177, 180 (7th Cir. 1976) ("The due process requirements of the Fifth and

Fourteenth Amendments, which guarantee access to the courts, do not grant a prisoner the right to attend court in order to carry on the civil proceedings which he initiates").

If a constitutional right under the Fourteenth Amendment could be identified, however, did Congress, before enacting 28 U.S.C. § 2411 et seq., identify a "history and pattern" of unconstitutional conduct by the States regarding inmates being made available to testify in lawsuits in which neither the propriety of confinement nor actions by any State agent were questioned? *Garrett*, 531 U.S. at 368-71. Searching all relevant legislative history would be daunting – since the habeas statute was first extended to State custodians in 1867 and has been amended numerous times – but an exhaustive search would not likely assist Barnes. Congressional concerns in 1867, in extending federal habeas remedies to State custodians, were apparently unrelated to State prisoners being deprived of opportunities to testify at trials against third parties that the inmates initiated. *E.g., Stocker*, 2004 WL 603400 at *9-*11 and legislative history cited.

Finally, if all other *Garrett* prerequisites were met, to the extent that provisions regarding testimonial writs in 28 U.S.C. §§ 2241 et seq. may "reach[] beyond the scope of [the] actual guarantees [in Section 1 of the Fourteenth Amendment," does the statute "exhibit 'congruence and

proportionality between the injury to be prevented or remedied and the means adopted to that end"? *Garrett*, 531 U.S. at 368-71. Absent **any** actual guarantee under the Fourteenth Amendment that an inmate may attend trial in a civil case initiated by the inmate (*e.g.*, *Matter of Warden of Wisconsin State Prison*, 541 F.2d at 180), provisions regarding testimonial writs in 28 U.S.C. §§ 2241 et seq. are entirely beyond the scope of the Fourteenth Amendment, such that congruence and proportionality tests must be met. *Garrett*, 531 U.S. at 368-71.

What, if any, constitutional "'injury to be prevented or remedied'" would merit abrogation of Wisconsin's immunity? Again, absent any applicable Fourteenth Amendment guarantee (*e.g.*, *Matter of Warden of Wisconsin State Prison*, 541 F.2d at 180), Wisconsin can conjure none. If there were any constitutional injury cognizable under *Garrett*, however, what could justify the "'means'" of requiring States to expend financial resources of their own citizens transporting inmates beyond their borders so that inmates could testify in person in cases that question neither the propriety of confinement nor actions by any State agent? Provisions regarding testimonial writs in 28 U.S.C. §§ 2241 et seq. can hardly pass congruence and proportionality tests when the discrimination statute at issue in *Garrett* could not pass those tests. *Garrett*, 531 U.S. at 368-71.

E.    The burden on States, and the affront to their sovereignty, is heightened dramatically when district courts require States to transport inmates beyond the States' own borders for testimony purposes in cases that question neither the propriety of confinement nor actions by any State agent.

1.    A State's costs in transporting inmates pursuant to federal *ad testificandum* writs may not be recovered from the inmate or form the U.S. Marshals' Service.

States' costs in transporting inmates pursuant to federal *ad testificandum* writs may not be recovered from inmates.  *E.g., Sales v. Marshall*, 873 F.2d 115, 118-19 (6th Cir. 1989).  Those costs also may not be recovered from the U.S. Marshals' Service.  *E.g., Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 38-39 (1985).  Any resources dedicated, from State treasuries, towards compliance with federal writs of habeas corpus *ad testificandum* are unrecoverable.

2.    The *Stone* statement.

In 1976, *Stone v. Morris*, 546 F.2d 730, 735 (7th Cir. 1976), *reh. & reh. en banc denied*, concluded that an Illinois district court could, through an *ad testificandum* writ, require the State of Illinois to produce an inmate confined within another Illinois district.  *Stone*, 546 F.2d at 735.  Although *Stone* did not involve transportation beyond

Illinois's borders, it stated that courts have discretionary authority to compel custodians "'anywhere in the country'" to produce inmates through *ad testificandum* writs. 546 F.2d at 735. Eleventh Amendment immunity was not addressed in *Stone*. *Id.*

In context, was that statement in *Stone* a holding or *dictum*? The statement about countrywide power was not "anchored by the particular facts of th[e] dispute." *Wilder v. Apfel*, 153 F.3d 799, 803 (7th Cir. 1998). The dispute in *Stone* was whether a federal court in one Illinois district had power to require an Illinois custodian to produce an inmate incarcerated within another Illinois district to testify in his suit challenging confinement conditions while incarcerated in the first district. *Stone*, 546 F.2d at 732-33. Given that fact setting, there was no need to consider whether a State could be required to produce any inmate, for testimony purposes, beyond the State's borders. Under the *Wilder* test, the "countrywide" statement in *Stone* was *dictum*.

Under the *Crawley* dicta test, however, could the statement "'have been deleted without seriously impairing the analytical foundations'" of *Stone*? *United States v. Crawley*, 837 F.2d 291, 292-93 (7th Cir. 1988). *Stone* commenced with the premise that district courts had "countrywide" power and then concluded that, **within** Illinois' boundaries, the State of Illinois could be required to transport an

inmate from an institution in one Illinois district to a courthouse in another Illinois district to address claims of wrongful detention. If the *Stone* statement was mere *dicta*, it is entitled to no more than respect and consideration of its persuasive value. If it was a holding, under the *Crawley* test, its continuing binding effect should be considered.

3.      Continuing viability of *Stone* statement.

If the *Stone* statement was a holding, it may no longer be viable. Subsequent Court holdings regarding Eleventh Amendment immunity may have sufficiently undermined the statement to remove any binding effect. *E.g., Robb v. Norfolk & Western Ry. Co.*, 122 F.3d 354, 361, n.5 (7th Cir. 1997), reh. & reh. en banc denied.

For one sovereign to require a second sovereign to produce an inmate beyond the second sovereign's boundaries is, under any circumstances, substantially more problematic than requiring the second sovereign to merely produce an inmate within its own boundaries – the setting in *Stone*. *Cf. e.g., Mancusi v. Stubbs*, 408 U.S. 204, 209-13 (1972) (while a **federal** prisoner in Texas was held available, in *Barber v. Page*, 390 U.S. 719 (1968), to testify in Oklahoma court proceeding, a witness living in Sweden was unavailable to testify in a Tennessee court proceeding). Also, as prior analysis reflects, requiring Illinois to produce an inmate within its borders regarding

conduct related to Illinois' confinement of that inmate (*Stone*, 546 F.2d at 732-33) is a significantly lower affront to State sovereignty than requiring Wisconsin to produce Barnes beyond its borders to testify in a case he initiated about an incident in which Wisconsin was uninvolved.

In habeas settings, even regarding third parties that have no immunities, "a federal court may impose duties upon third parties only when they do not present unreasonable burdens." *Ford v. Carballo*, 577 F.2d 404, 408 (7th Cir. 1978). When State officials are being subjected to habeas writs, those concerns are, for Eleventh Amendment reasons, considerably heightened.

Starting in 1996, the Court revived Eleventh Amendment immunity in ways that may render the assumptions underpinning *Stone* untenable. As noted earlier, writs directed to State custodians regarding allegedly illegal detentions are governed by the *Ex parte Young* exception to Eleventh Amendment immunity and, to the extent that they fall outside that exception, are subject to Eleventh Amendment immunity. As also noted above, there is no logical reason that this Eleventh Amendment immunity paradigm would not govern writs of habeas corpus *ad testificandum* directed to State custodians.

Litigants seeking relief against State officials in their official capacities fail to properly invoke the *Ex parte Young* exception unless

they allege continuing violations of federal law. *Cf., e.g., Breard v. Greene*, 523 U.S. 371, 373-74 & 377-78 (1998) (per curiam); *Vickery v. Jones*, 100 F.3d 1334, 1347 (7th Cir. 1996) ("the Young exception permits relief against state officials only when there is an ongoing or threatened violation of federal law"), *cert. denied*, 520 U.S. 1197 (1997). The exception is inapplicable here since Barnes did not allege **any** misconduct, ongoing or otherwise, by any Wisconsin agent. (Dkt. 6, 24 & 208.) No recognized exception to Eleventh Amendment immunity applies. Nothing in 28 U.S.C. § 2241 et seq. suggests valid abrogation of Wisconsin's immunity against the writ that Barnes requested.

Had the requested writ issued to Barnes' custodian, he would likely have interposed Eleventh Amendment immunity in this situation that falls far outside of the *Young* exception. Even if the level of State expenses involved were not so daunting, the distraction of Wisconsin's officials from their other duties would have justified that response. The statement in *Stone* regarding the authority of a district court to order any State, anywhere in the country, to transport inmates to that district court at the expense of the State cannot be squared with subsequent Supreme Court holdings regarding Eleventh Amendment immunity. *E.g., Robb*, 122 F.3d at 361, n.5

F.     The court below articulated alternate reasons to
       conclude that it lacked authority to issue the
       requested writ.

The court below, while concluding that it had general authority to

issue *ad testificandum* writs to State custodians beyond the territorial

boundaries of its district, determined that it lacked authority to grant

Barnes' petition for two reasons: (1) Barnes sought to require his

Wisconsin to produce him at trial through an *ad testificandum* writ

even though neither his confinement nor actions were questioned and

(2) Barnes sought to not only testify but also prosecute this case at trial,

which goes beyond the ordinary scope of *ad testificandum* writs.

(Dkt. 226 (1/14/08 Order, pp. 4-13.)

Bolstering the analysis articulated by the court below, consider

the requests that future inmates may make to district courts – in

lawsuits they may create for that purpose – if it is concluded that

Barnes' request should have been granted.  All evidence suggests that

Barnes is sincere both in pursuing this lawsuit and seeking to appear at

trial.  This Court is familiar, however, with the proclivity of other

inmates to file federal lawsuits, without substantial fear of sanctions,

designed not to pursue legitimate claims but to cause disruption and

trouble for their custodians.  *E.g., Merritt v. Faulkner*, 823 F.2d 1150,

1157 (7th Cir. 1987) (Posner, J., concurring).  Should this Court hold

that district courts have authority to grant writs like the one requested by Barnes, inmates with that proclivity may file lawsuits far from their place of confinement with the goal of causing their State custodians to transport them to their chosen district court. Most such efforts would likely be thwarted at a discretionary level, but States' protections against such tactics would be dependent on district court discretion, rather than authority where, Wisconsin submits, such efforts should fail.

While Wisconsin concludes, for the reasons it articulated earlier, that the authority issue turns on the broader questions of Eleventh Amendment immunity, it otherwise notes that the alternate rationales articulated below for why authority is lacking are sufficiently well-stated that further elaboration on those alternate rationales by Wisconsin in this *amicus* brief would not assist this court.

G.  Conclusion.

Wisconsin submits that, given Eleventh Amendment immunity, district courts are not authorized to order officials of non-consenting States to produce an inmate beyond the state's borders to testify in a civil suit that challenges neither the inmate's confinement nor actions by any state agent. Alternately, the rationales articulated by the court

confirm that it lacked authority in this specific setting. The writ should be denied based on lack of authority.

II.    If judicial authority existed to issue the writ requested by Barnes, the court below correctly determined that a writ of habeas corpus *ad testificandum* should not issue.

Wisconsin submits that, even if the district court had authority to issue the writ, it did not abuse discretion in denying Barnes' request. *Stone*, assuming that district courts have the authority to issue *ad testificandum* writs to State custodians, held that the decision was discretionary with the district court and identified factors that those courts should consider in exercising its discretionary authority. *Stone*, 546 F.2d at 735-36.

As an *amicus* below, Wisconsin refrained from presenting "additional evidence" and focused on legal issues. *Wiggins Bros., Inc. v. Department of Energy*, 667 F.2d 77, 83 (Em.App. 1981), cert. denied, 456 U.S. 905 (1982). *See also, e.g.*, *Bryant v. Better Business Bureau of Greater Maryland, Inc.*, 923 F.Supp. 720, 727 (D.Md.1996). In the context of its legal arguments, Wisconsin merely noted that Fox Lake Correctional Institution is a medium and minimum security facility in Fox Lake, Wisconsin, operated by the Wisconsin Department of Corrections and that Fox Lake, Wisconsin is nearly 250 miles, and over four hours driving time, distant from Peoria, Illinois. (Dkt. 218, p. 8,

Att. 101 & 102.)  The court below correctly determined, based on facts that it could judicially note, that the cost and inconvenience to Wisconsin of complying with the requested writ would be considerable. (Dkt. 226 (1/14/08 Order, pp. 12-13, n.3).)

Each fact that it noted was well within its judicial notice authority under Fed.R.Evid. 901 and 902.  Costs of various activities are often appropriate for judicial notice.  *E.g., Banton v. Belt Line Ry. Corporation*, 268 U.S. 413, 422 (1925) (proper to note increased cost of operating street railroads); *Industrial Lumber Co. v. Commissioner of Internal Revenue*, 58 F.2d 123, 125 (5th Cir. 1932) (proper to note elements of cost to lumber manufacturer of raw material); *Consolidated Grain and Barge Co. v. Wisconsin Barge Line, Inc.*, 522 F.Supp. 842, 849 (E.D.Mo. 1981) (judicially noting cost of borrowing money at relevant times to determine prejudgment interest rate).  Calculating costs based on distances is also fodder for judicial notice.  *E.g., Saco v. Tug Tucana Corp.*, 483 F.Supp.2d 88, 92-93 (D.Mass. 2007); *U. S. v. Orejel-Tejeda*, 194 F.Supp. 140, 141-42 (N.D.Cal. 1961).  *See also, e.g.*, *Lowrance v. Pflueger*, 878 F.2d 1014, 1018 (7th Cir. 1989).

The court below articulated its analysis of the minimum costs that would result from granting the writ in a clear and thorough fashion.  (Dkt. 226 (1/14/08 Order, p. 12, n.3.)  It considered and

weighed the potential costs to the custodian that would be incurred if the writ were issued.  (*Id.*.)  It articulated in detail why Barnes' estimate of costs, unsupported by evidence, "grossly underestimated" the actual costs of at least two guards travelling with, and remaining with, Barnes on a 24-hour basis during the anticipated "three day trial" in Peoria, Illinois.  (*Id.*)  The cost and inconvenience factor, standing alone, would justify denial of the writ in this setting.

Wisconsin, unfamiliar with the relevant facts in this lengthy proceeding pending since 2004, was unable to assist the court below in analyzing other *Stone* factors.  It noted, however, that during the thirty years since *Stone*, technology had advanced to the point – as reflected by the videoconferencing capabilities of the court below (see http://www.ilcd.uscourts.gov/forms/Courtroom_Technology_Brochure.pdf.) – that a litigant or witness far from the courthouse can, admittedly with limitations, participate throughout a trial in meaningful ways.  *E.g., Thornton v. Snyder*, 428 F.3d 690, 697-99 (7th Cir. 2005), *reh. & reh. en banc denied* (no abuse of discretion in conducting jury trial of inmate's civil rights claim by videoconference and not allowing inmate to be physically present in the courtroom), *cert. denied*, 126 S.Ct. 2862 (2006).  With Barnes, like Thornton, representing himself, he would not "have counsel forced to choose between being in the same room as his client

and thus not in the same room as the judge and jury, or remaining in the courtroom with the judge and jury and thus unable to confer in person with his client."  428 F.3d at 699.

Until the advent of meaningful videoconferencing facilities, federal courts requested to issue *ad testificandum* writs for purposes of in-person testimony were confronted with the likelihood that denial of those writs would substantially diminish the effectiveness of testimony presented by alternate means, primarily the reading of transcripts by others.  Meaningful videoconferencing facilities now allow full interactive participation between the witness and those in the courtroom on a real-time basis.  While not precisely equivalent to the witness being present in court, the distinctions are, compared with the situation when *Stone* issued, relatively minimal.

The analysis by the court below, though focused on authority issues, well articulated why no other *Stone* factor would not warrant issuance of the writ even if the court had authority in this setting. (Dkt. 226 (1/14/08 Order, pp. 4-12).)  For example, "the integrity of the correctional system" (*Stone*, 546 F.2d at 735-36) would be affected by issuing the requested writ because "the operation of Fox Lake Correctional Institution will be disrupted by the absence of [the] guards [required to accompany Barnes] from their regular duties."  (Dkt. 226

(Dkt. 226 (1/14/08 Order, p. 12, n.3).)  The court below expressly addressed several other *Stone* factors, using the language from *Stone*, explaining why those factors either had little weight or argued against granting the writ. (*Id.*)  If this court concludes that the court below had authority to issue the writ, Barnes will be unable to prove that denial of the writ would have constituted an abuse of discretion.  Indeed, given how intrusive the requested writ would be State sovereignty rights, it may be that granting such writs would always abuse discretion.

## Conclusion

Wisconsin, as an *amicus*, submits that the court below lacked authority to issue the requested writ and that, even if it had authority, it would not have constituted an abuse of discretion to deny the writ.

Dated this 22nd day of May, 2008.

> J.B. VAN HOLLEN
> Attorney General
>
> RICHARD BRILES MORIARTY*
> Assistant Attorney General
> State Bar #1017190
>
> Attorneys for State of Wisconsin,
> *Amicus Curiae*

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796

*\*Counsel of Record*

# CERTIFICATE OF COMPLIANCE WITH F.R.A.P. RULE 32(a)(7)

The undersigned, counsel of record of the Defendants-Appellees furnishes the following in compliance with F.R.A.P. Rule 32(a)(7):

I hereby certify that this brief conforms to the rules contained in F.R.A.P. Rule 32(a)(7) for a brief produced with a proportionally spaced font. The length of this brief is 6,900 words.

J.B. VAN HOLLEN
Attorney General

RICHARD BRILES MORIARTY*
Assistant Attorney General
State Bar #1017190

Attorneys for State of Wisconsin,
*Amicus Curiae*

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796

*Counsel of Record*

## CIRCUIT RULE 31(e) CERTIFICATION

The undersigned hereby certifies that I have filed electronically, pursuant to Circuit Court Rule 31(e), a version of the brief and that no appendix items are being submitted by this *Amicus Curiae*.

J.B. VAN HOLLEN
Attorney General

RICHARD BRILES MORIARTY
Assistant Attorney General
State Bar #1017190

Attorneys for State of Wisconsin,
*Amicus Curiae*

Wisconsin Department of Justice
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 267-2796

*Counsel of Record*